IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 7, 2018

**JERECO TYNES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
No. 10-02861     James M. Lammey, Jr., Judge**

_____

**No. W2018-00005-CCA-R3-PC**

_____

The petitioner, Jereco Tynes, appeals the denial of his petition for post-conviction relief, which petition challenged his 2010 jury convictions of felony murder, aggravated robbery, and attempted aggravated robbery, alleging that he was deprived of the effective assistance of counsel at trial.  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and ROBERT L. HOLLOWAY, JR., JJ., joined.

Iclem Jaber, Memphis, Tennessee, for the appellant, Jereco Tynes.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Tyler Parks and Leslie Byrd, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

A Shelby County Criminal Court jury convicted the petitioner of one count of felony murder, one count of aggravated robbery, one count of attempted aggravated robbery, and one count of theft of property valued at more than $10,000 but less than $60,000, and the trial court imposed a sentence of life plus 13 years' imprisonment.  *See State v. Jereco Tynes*, W2010-02511-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, Mar. 13, 2013), *perm. app. denied* (Tenn. June 11, 2013).

The petitioner was charged with "the first degree felony murder of Jose Sanchez; the attempted aggravated robbery of Jose Sanchez; the aggravated robbery of Michael Stack; and the theft of property valued between $10,000 and $60,000 from

Michael Stack; all committed in December 2008." *Id.*, slip op. at 2. Mr. Stack testified that he was robbed of his wallet, cellular telephone, iPod, and car keys at gunpoint by four men as he walked from his car to the gym on December 22, 2008. The assailants then used Mr. Stack's keys to steal his car from the lot where it had been parked. Mr. Stack testified "that he remembered the [petitioner] as one of the men other than the gunman." *Id.*, slip op. at 3. The petitioner provided a statement to the police admitting "that he participated in the robbery of [Mr.] Stack, 'as a lookout.'" *Id.*, slip op. at 4. The petitioner told the police that the robbery was not his idea and that he did not receive any of the proceeds from it.

Leandres Lee testified that he participated with the petitioner in the robbery of Mr. Stack and that he was present when the petitioner and Barry McDade murdered Mr. Sanchez while attempting to rob him. *Id.*, slip op. at 5. Mr. Lee said that the petitioner shot Mr. Sanchez with a black gun after striking him with that same weapon and then threatened Mr. Lee after the offenses because the petitioner believed that Mr. Lee had told others about the shooting.

Robert Sutton testified that on the night of the shooting, the petitioner telephoned him and said "that he had shot someone but did not know if the victim was dead." *Id.*, slip op. at 9. The petitioner "also told [Mr. Sutton] that he had dropped the gun and had not been able to find it." *Id.* A black gun was discovered on the pavement not far from the victim's body. The petitioner described the shooting as an accident.

This court affirmed the convictions of felony murder, aggravated robbery, and attempted aggravated robbery but reversed the conviction of theft of property and remanded that count for a new trial.[1] *Id.*, slip op. at 1.

At the February 18, 2016 evidentiary hearing, trial counsel testified that he was appointed to represent the petitioner on August 4, 2009, and that the case went to trial in April 2012. Counsel said that he was able to negotiate a plea offer with the State for a sentence of 35 years, 25 of which would be served at 100 percent release eligibility percentage, in exchange for the petitioner's pleading guilty to one count of second degree murder and one count of aggravated robbery. Trial counsel testified that he had warned the petitioner that he faced "a total exposure of 79 years" incarceration should he be convicted at trial. The petitioner rejected the offer because "he wanted a similar offer to [his co-defendants]" and elected to proceed to trial.

Trial counsel testified that he did not attempt to have the petitioner's pretrial statements to the police suppressed because counsel "felt that [the petitioner's]

---

[1] The current status of the defendant's theft conviction is unclear from the record.

statements were beneficial to him in that it showed a lack of his involvement in the first crime and that the gun accidentally went off in the second crime." Similarly, he elected not to file a motion to sever the offenses committed against Mr. Stack from the offenses committed against Mr. Sanchez because he "wanted to show the [petitioner's] lack of involvement in the first crime and who the main players were in that crime." Counsel said that he wanted to show, using the facts of the crimes against Mr. Stack, that Messrs. Burns and Lee "were the actual leaders. That it was Mr. Lee's idea and that Burns brought the gun to the scene." He explained, "So the main reason I didn't [file a motion to sever] is a tactical decision to try to incorporate both crimes and to show his lack of involvement and who the real leaders or the real perpetrators were."

Counsel added that "this obviously could have been a case for mandatory joinder based upon the same criminal episode" given that the offenses occurred on the same day and that Mr. Stack's car was used to drive all the perpetrators to the location of the murder of Mr. Sanchez. He said that it was his opinion that, even if joinder was not mandatory, it was certainly permissible under the rules of evidence. Thus, in addition to his conclusion that joinder of the offenses would actually benefit the petitioner, he concluded that a motion to sever would likely be unsuccessful. Counsel testified, "I'm not sure if he was in agreement or not, but that's one of the tactical decisions I feel an attorney has to make based on what their trial strategy may be." He said that he told the petitioner that he "thought it would be advantageous . . . to incorporate the first aggravated robbery where he had little or no involvement." Trial counsel said that he did not regret his decision not to pursue a severance of offenses. Indeed, he said that his greatest regret was that he was unable to convince the petitioner to accept the State's offer.

During cross-examination, trial counsel recalled that on the day that two of the petitioner's co-defendants accepted plea offers and pleaded guilty, he questioned the petitioner on the record about his decision to reject the State's plea offer. Counsel said that he had asked the trial court to allow the petitioner to "be in the courtroom when the [co-defendants] entered their plea so he could hear what they were settling for and . . . whether it was their intent to go ahead and testify against him in the future." He said that his notes indicated that the petitioner "was really wanting concurrent time and was upset with the fact that" the co-defendants were offered "lesser time than he was being offered." The State made only the single plea offer, and that offer was only given after considerable negotiation.

The petitioner testified that trial counsel never discussed the issue of severing the offenses with him. He acknowledged that trial counsel had negotiated a plea agreement for him and that he had rejected the offer. It was his belief that he deserved a sentence of no more than 15 years "as [his] part," explaining, "I don't think I deserve all

that time for something that [the co-defendants] did on they own." He did not recall counsel's having questioned him on the record about his rejecting the offer but did recall that counsel arranged for him to speak with his mother about the offer. He conceded that counsel told him that the plea offer "was a good deal." The petitioner insisted, however, that counsel could have obtained a more favorable plea agreement if he had fought harder.

The petitioner complained that the post-conviction court should have allowed him to present as witnesses at the evidentiary hearing Mr. McDade, Mr. Stack, and the two assistant district attorneys general who had prosecuted the case. The petitioner said that he wanted Mr. McDade to testify regarding the recantation of Mr. McDade's identification of the petitioner as the person who shot Mr. Sanchez.

The petitioner acknowledged that all of his co-defendants testified at trial that the petitioner had shot Mr. Sanchez and that he had admitted to the police and others that he had accidentally shot Mr. Sanchez.

At the conclusion of the hearing, the post-conviction court denied relief. The court accredited trial counsel's testimony, stating that it "put a lot of credence in what defense counsel had to say" and that trial counsel's decision not to pursue a severance of offenses "makes sense when you look at what the [petitioner] was confronted with that they tried to make it look like this was an accident." The post-conviction court observed that counsel's strategy was supported by the petitioner's pretrial statements. The post-conviction court found that counsel had worked diligently to secure the plea offer and that the petitioner could not now blame counsel for his own failure to accept the agreement. The post-conviction court incorporated its oral findings of fact and conclusions of law into the written order denying post-conviction relief.

In this timely appeal, the petitioner asserts that the post-conviction court erred by denying post-conviction relief, reiterating his claims that his trial counsel performed deficiently by failing to seek a severance of the charges and by failing to obtain a favorable plea offer from the State. The State contends that the post-conviction court did not err.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings

-4-

are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record fully supports the denial of post-conviction relief in this case. Trial counsel's accredited testimony established that he made a tactical decision not to pursue a severance of the offenses committed against Mr. Stack from those committed against Mr. Sanchez because he wanted to use the fact that the petitioner was a minimal participant in the offenses against Mr. Stack to suggest that the petitioner was also a minimal participant in the offenses against Mr. Sanchez. Counsel's testimony also established that he believed a motion to sever the offenses would likely be denied. This court will not second guess a reasonable, albeit unsuccessful, tactical decision made

in support of a sound trial strategy. As to the petitioner's claim that trial counsel failed to secure a favorable plea offer from the State, the record simply does not support his assertion. Counsel testified that the State initially made no plea offers to the petitioner and that, after considerable negotiation by trial counsel, the State made an offer that included a total sentence of 35 years' incarceration, less than half of the total effective sentence that the petitioner received in this case. The petitioner presented no evidence to suggest that counsel could have obtained an even more favorable offer from the State. We agree with the post-conviction court that trial counsel cannot be blamed for the petitioner's refusal to accept that agreement.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE